UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| AMBER SIMPSON, et al, § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> JOE CISNEROS, § <br> Defendant. § | C.A. NO. 6:20-CV-00716-ADA-JCM |

REPORT AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE ALAN D ALBRIGHT,
     UNITED STATES DISTRICT JUDGE

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(f) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is Defendant's Motion for Summary Judgment (ECF No. 50), Plaintiffs' Response (ECF No. 51), and Defendant's Reply (ECF No. 52). For the following reasons, the Court **RECOMMENDS** Defendant's Motion be **GRANTED IN PART AND DENIED IN PART.**

### I.  BACKGROUND

Amber Simpson, Britney Foster, and Stephanie Olivarri sued Joe Cisneros for violations of their Eight Amendment right against cruel and unusual punishment and Due Process violations under 42 U.S.C. § 1983 based on alleged sexual abuse. Pls.' Compl. at ⁋ 52. Plaintiffs allege that while they were incarcerated at the Woodman Unit of the Texas Department of Criminal Justice, they were assigned to a pluming work crew supervised by Joe Cisneros, a jail guard. Pls.' Appx. at 28, 49, 61. Plaintiffs allege that Defendant made constant inappropriate,

1

sexual comments to female inmates. *Id.* at 64–70. These statements include things like talking about his "sick dick." Def.'s Appx. at 49. Plaintiffs also allege instances of sexual assault or sexual harassment by Defendant against each of them.

In her deposition, Foster testified that

> [Cisneros] got a little close – real close to me where his thing, it was still in his pants, but it was in my face. And he would grab his pants, and he would go up and down, put it to the side and then scoot it back up, but it was in my face.

Def. Appx. at 15. During this instance, Cisneros was close enough that his knees brushed against Foster's knees while she was seated. She also testified that Cisneros tried to grab her butt once after that. *Id.*

Simpson testified that Defendant was "off by himself with an offender" everyday contrary to policy. *Id.* at 49. She also testified that when female offenders would leave pipe chases, they had to crawl out. When the females would crawl back out of the pipe chases, "he'd be standing there, you know, right in front of the door; and, you know, his – his privates are at your face level. And he wouldn't move." *Id.* at 50. He would also say inappropriate things when the females crawled out of the pipe chases. She testified that Defendant asked her to go into a building and perform sexual favors for him a few times. *Id.* at 51.

She also testified that Defendant physically sexually assaulted her twice. Once, Defendant reached into her shirt pocket to take a screwdriver and "grabbed [her] left breast and rubbed on it and then took the screwdriver and walked off like nothing happened." *Id.* Another time, when she was in a pipe chase, Defendant "stuck his hands down [her] pants and panties, rubbing on [her] vagina" in front of another offender. *Id.* at 52. Defendant only stopped after Simpson stepped forward as far as she could and later acknowledged that he crossed the line.

Olivarri testified that she was assigned to fix a pipe under Defendant's supervision. *Id.* at 84. She testified that during that time, Defendant was "right behind me. And right when I turned to see him there, he stuck his hand from behind me between my legs up to my vaginal area and started rubbing it. And I froze and closed my legs, and he pulled his hand out." *Id.*

Defendant filed this motion for summary judgment, raising the affirmative defense of qualified immunity. Plaintiffs responded and Defendant replied.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is not genuine if the trier of fact could not, after an examination of the record, find for the nonmoving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 578 (1986). The moving party bears the burden of showing that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That said, the moving party can satisfy its burden either by producing evidence negating a material fact or pointing out the absence of evidence supporting a material element of the nonmovant's claim. *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991). Throughout this analysis, the Court must view the evidence and all factual inferences in a light most favorable to the party opposing summary judgment. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

## III.     ANALYSIS

Defendant filed this motion, arguing that Plaintiffs cannot overcome Defendant's entitlement to qualified immunity because "it is not clearly established that the isolated events of unwanted contact attributed to him by each Plaintiff violated the Constitution." Def.'s Mot. at 1.

Plaintiffs argue that their right to not be sexually assaulted and harassed in jail has been clearly established for decades. *See generally* Pls.' Resp.

### A. Defendant's Motion on Plaintiffs' Eighth Amendment claims should be granted.

Defendant argues that "it is not clearly established that the incidents described by Plaintiffs rise to the level of an Eighth Amendment violation." Def.'s Mot. at 15. Defendant specifically argues that, under *Copeland v. Nuan*, isolated, unwanted touching by prison employees are insufficient to rise to the level of an Eighth Amendment violation. *Id.* citing *Copeland v. Nuan*, 250 F.3d 743 (5th Cir. 2001) (unpub.) (per curiam). Plaintiffs respond that the general right not to be sexually assaulted by government officials has been established for decades.

Qualified immunity shields government officials from civil liability for claims under federal law unless their conduct "violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," the Fifth Circuit considers qualified immunity the norm and admonishes courts to deny a defendant immunity only in rare circumstances. *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (internal quotation marks omitted).

Courts use a two-prong analysis to determine whether an officer is entitled to qualified immunity. *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019). A plaintiff must show (1) the official violated a constitutional right; and (2) the constitutional right was "clearly

established" at the time of the defendant's alleged misconduct. *Reed v. Taylor*, 923 F.3d 411, 414 (5th Cir. 2019). The Supreme Court held in *Pearson* that "the judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 236. Although qualified immunity is an affirmative defense, the plaintiff bears the burden to rebut the defense and assert facts to satisfy both prongs of the analysis. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). If a plaintiff fails to establish either prong, the public official is immune from suit. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Under the Eighth Amendment, "sexual assaults against inmates by prison guards without lasting physical injury may be actionable under the Eighth Amendment as acts which are 'offensive to human dignity.'" *Copeland*, 250 F.3d 743, at *2, citing *Schwenk v. Hartford*, 204 F.3d 1187, 1196–97 (9th Cir. 2000). But "not every malevolent touching" is offensive to human dignity. *Id.* citing *Hudson v. McMillian*, 503 U.S. 1 (1992). Further, the Eighth Amendment's prohibition on cruel and unusual punishments "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* (citations omitted). This includes "isolated, unwanted touchings [sic] by prison employees." *Id.* at *3.

Here, Plaintiffs have alleged and presented evidence supporting isolated incidents of unwanted touching and sexual harassment. Foster testified that

> [Defendant] got a little close – real close to me where his thing, it was still in his pants, but it was in my face. And he would grab his pants, and he would go up and down, put it to the side and then scoot it back up, but it was in my face.

Def. Appx. at 15. Simpson testified that Cisneros reached into her shirt pocket to take a screw driver and "grabbed [her] left breast and rubbed on it and then took the screwdriver and walked off like nothing happened." *Id.* at 51. Simpson also testified that once when she was in a pipe chase Cisneros "stuck his hands down [her] pants and panties, rubbing on [her] vagina" in front of another offender. *Id.* at 52. Cisneros only stopped after Simpson stepped forward as far as she could, later acknowledging that he crossed the line. *Id.* Olivarri testified that while she was fixing a pipe under Cisneros's supervision, he was "right behind me. And right when I turned to see him there, he stuck his hand from behind me between my legs up to my vaginal area and started rubbing it. And I froze and closed my legs, and he pulled his hand out." *Id.* at 84.

While these acts, if true, are heinous and reprehensible, they do not rise to the level of an Eighth Amendment violation under current Fifth Circuit precedent. In *Copeland*, the inmate alleged that a prison pharmacist "fondled his penis through the food slot of his cell on three separate occasions" and "fondles his anus" once. *Copeland*, 250 F.3d at *1. The district court held that the pharmacist was not entitled to qualified immunity because "any reasonable prison official knows that forcing the type of unwanted sexual acts alleged in this case upon an inmate is objectively unreasonable and in violation of the inmate's rights." *Id.* at *2. The Fifth Circuit reversed, holding that those events did not involve a harm great enough to rise to the level of an Eighth Amendment violation "especially in the absence of any physical and no more than *de minimis* psychological injuries." *Id.* at *3.

Plaintiffs here have alleged fewer instances of unwanted sexual touching than the inmate in *Copeland*. The instances alleged by Plaintiffs are also of the same general nature as the *Copeland* instances and do not involve any physical injuries. Accordingly, Plaintiffs' allegations do not rise to the level of a violation of the Eighth Amendment's prohibitions on cruel and

unusual punishments and Defendant's Motion on Plaintiffs' Eighth Amendment claims should be **GRANTED.**

**B. Defendant's Motion on Plaintiffs' Fourteenth Amendment claims should be denied.**

Defendant also moved for summary judgment on Plaintiffs' Fourteenth Amendment claims based on qualified immunity, arguing that "it is not clearly established that [Defendant's] actions violated due process." Def.'s Mot. at 19–20. Plaintiff argues that their right to bodily integrity under the Fourteenth Amendment's Due Process clause have been clearly established and were violated. Pls.' Resp. at 6–7.

The Fourteenth Amendment's substantive due process component secures the "right to be free of state-occasioned damage to a person's bodily integrity." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450–51 (5th Cir. 1994) (en banc) (quotations omitted). A violation of the right to bodily integrity follows from a state actor's behavior that is so egregious and outrageous that it may be fairly said to shock the contemporary conscience. *Tyson v. Sabine*, 42 F.4th 508, 517 (5th Cir. 2022) (citing *Cnty. Of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)). The Fifth Circuit has "long recognized that physical sexual abuse by a state official violates the right to bodily integrity." *Id.* (collecting citations). But "[p]hysical force is not a requirement of a violation of the right to bodily integrity," and the Fifth Circuit has "recognized violations of the right to bodily integrity where the officer never physically touched the plaintiff and the plaintiff suffered purely psychological harm." *Id.* at 518.

In *Tyson*, the plaintiff alleged that during a welfare check, a sheriff's deputy made numerous uninvited, nonconsensual sexual statements and commands. *Id.* at 513. The plaintiff further alleged that the deputy sexually assaulted her. *Id.* at 514. Specifically, she alleged that, "He commanded her to expose her breasts and her vagina, and spread her labia to expose her

7

clitoris. After a prolonged hesitation, [the plaintiff] complied. Deputy Boyd then masturbated to ejaculation in front of her." *Id.* The trial court held that the plaintiff's right to bodily integrity had not been violated because the deputy had not physically touched her. *Id.* The Fifth Circuit reversed, holding that "Deputy Boyd's alleged conduct was an outrageous abuse of power that shocks the conscience and violated [the plaintiff's] right to bodily integrity." *Id.* at 519.

The facts of this case are similar. Here, Defendant put his penis in Foster's face and moved it around in her face. Def.'s Appx. at 15. Simpson testified that Defendant groped her breast and "stuck his hands down [her] pants and panties, rubbing on [her] vagina." *Id.* at 51–52. Finally, Olivarri testified that Defendant "stuck his hand from behind me between my legs up to my vaginal area and started rubbing it." *Id.* at 84. These acts of physical and non-physical sexual abuse constitute a violation of Plaintiffs' clearly established right to bodily integrity under the Fourteenth Amendment's Due Process clause. Accordingly, Defendant's Motion should be **DENIED** as to those claims.

## IV. CONCLUSION

For the reasons discussed above, the Court **RECOMMENDS** Defendant's Motion for Summary Judgment (ECF No. 50) be **GRANTED IN PART AND DENIED IN PART.** Should the Court adopt this Report and Recommendation in full, Plaintiffs' Eighth Amendment claims will be dismissed but their Fourteenth Amendment claim will remain.

## V. OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1415.

**SIGNED this 1st day of September 2023.**

*[signature: Jeffrey C. Manske]*

**JEFFREY C. MANSKE**
**UNITED STATES MAGISTRATE JUDGE**